## Loomis Bros. Corp. v. Queen

*Vram Nedurian, Jr.*, for plaintiff.

*John W. Wellman*, for defendants.

DIGGINS, J., October 15, 1958.—This is a petition to open confessed judgment based upon a contract wherein plaintiff was to install 14 storm and screen windows in defendants' home. Defendants allege the windows were defective, useless as storm windows and not fit for the purpose intended, and that they did not fit snug

and tight and did not keep out the rain, snow and wind, and shook and rattled and were not air-tight. Plaintiff admits that the storm windows did not fit the aluminum frames snug and tight and that they may let in air and they may rattle.

The windows were purchased from an operating sample consisting of the storm window in miniature, mounted in a frame. They are known as "No. 7 triple track storm and screen windows with tilt features". Admittedly this was a low-priced commodity. Both petitioner and plaintiff knew this. At the hearing, there was a general accord in the matter of the circumstances surrounding the sale and the sample was produced. It was explained, and it seemed apparent from an examination of the same, that the trouble comes about because of the tilting device. It is to be borne in mind that this tilting device is a feature usually found on the more expensive storm windows. It permits interchange of screen and window and self-storage of the part not in use easily from inside the house. In order to provide this desirable feature and keep the price down, this window is ingeniously devised, providing three tracks for the window and screen sections, but none of these tracks have protection on the inside. If they did, they could not tilt when the locking device was released, nor can this inside feature be provided at the price of these storm windows. Therein lies the principal difference between these cheaper windows with the tilting device and the better type. Here is demonstrated the old axiom which I misquote as follows: "There is no quality article made but which some competitor may copy, cheapen and substitute therefor." When one examines the sample and relates its construction to the full-size window, the defect is apparent. Since there is no inside support, the narrow cross member does not bear tightly against the sash. This seem-

ingly makes little difference in the sample, but in the full-size window this lost contact is increased proportionately, and it is here that the wind and rain enter.

Legally we have here presented a very close question. The goods were purchased by sample, the goods conformed to the sample. Query: Must the goods also do the job for which they were designed and, if not, who bears the risk? Section 2-313 of the Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §2-313, under title "Express Warranties by Affirmation, Promise, Description, Samples", provides:

"(c) Any sample or model which is made a basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

It would seem from a precise interpretation of this section that substantial conformity to the model constitutes performance, but a reading of the cases both before and since the present Uniform Commercial Code indicates that something more is required and that is "fitness for the purpose intended" and "merchantability". All agree that here was conformity and merchantability. It is this fitness for purpose intended that presents the problem, and the philosophy of the law seems to indicate that this principal is basic and must be present in the article supplied regardless of the limitations surrounding a sale by sample or by description.

It was recently held in Frigidinners, Inc., v. Branchtown Gun Club, 176 Pa. Superior Ct. 643, 648, Ervin, J.:

"Testimony which tends to show that the freezer did not satisfactorily preserve the frozen food platters was therefore admissible to show a possible breach of the implied warranty that the freezer would satisfactorily perform the functions for which it was purchased,

namely, the proper preservation of frozen food platters."

This was a sale by description and there seems to be little or no difference between a sale by description and a sale by sample with respect to the fitness for purpose intended.

The purpose of storm windows is to keep out wind and weather. These windows conformed to the sample. They are merchantable, but they did not keep out wind and weather. It is conceivable that these windows, installed in a city residence, might have worked satisfactorily. The buyer here had built a new house in a rural section, without the protection of other dwellings and exposed to the full velocity of wind and weather, so even on the question of fitness for purpose intended, these windows cannot be unqualifiedly condemned.

The Commercial Code under discussion here is intended to be a uniform code and that means not only should it be uniformly adopted in the Nation, but that it should be uniformly interpreted. Perhaps in the nature of things, interpretation by the various State courts might vary, although we find no variation as yet, but it seems that a good source of uniformity in interpretation to follow would be that adopted by the Federal courts, if sound. In the case of John E. Smith's Sons Company v. Lattimer Foundry & Machine Company, 19 F. R. D. 379, 389, a case in the middle district of Pennsylvania, interpreting the Pennsylvania statute, the court said:

"There was an implied warranty of fitness for the purpose intended that the castings would be the same as the sample."

We are therefor of the opinion that both under the Sales Act of May 19, 1915, P. L. 543, and the Uniform Commercial Code, where the seller submitted sample of goods to the buyer, there was implied warranty of fit-

ness for the purpose intended *and* that goods would be same as sample. Therefore, we think that fitness for purpose intended is the basic ingredient in every item sold, no matter by what type of bargaining the contract is reached, where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods: Uniform Commercial Code, 12 A PS §2-315.

Here there is a real question as to whether or not the goods meet this test. That they do to some extent seems obvious. That they do to an acceptable degree is open to question, and it would seem therefore that only a jury can properly resolve that issue, and we therefore feel compelled to open the judgment and let defendants into a defense and therefore make the following

### Order

And now, to wit, October 15, 1958, the rule to open judgment heretofore allowed is made absolute and the parties are directed to frame issues and proceed et reg. et sec. leg.